**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EMBRY JAY LOFTIS,

      Petitioner - Appellant,

v.

JERRY CHRISMAN,

      Respondent - Appellee.

No. 15-7017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 6:14-CV-00019-RAW-KEW)**

---

Submitted on the briefs:[*]

Embry Jay Loftis, pro se.

E. Scott Pruitt, Attorney General of Oklahoma, and Jennifer B. Welch, Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

[*] After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

On September 14, 2015, Petitioner Embry Loftis received a certificate of appealability to appeal the district court's dismissal of his § 2254 habeas petition as time-barred. We now consider the merits of Petitioner's argument that he is entitled to equitable tolling of the statute of limitations under the unique circumstances of this case.

Petitioner was convicted in an Oklahoma state court on charges of drug possession after former conviction of two or more felonies. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed his conviction and lowered his sentence from forty to thirty years of imprisonment. Petitioner's conviction became final on May 24, 2011.

On December 5, 2011, Petitioner filed an application for post-conviction relief in the state district court. His application was denied in an order entered on June 22, 2012.

Under Oklahoma's rules of criminal appellate procedure, the time for a petitioner to file a notice of appeal begins when the district court enters its order granting or denying relief, not when the petitioner actually receives the order. Okla. Stat. tit. 22, ch. 18, app., R. 5.2(C)(1). The court clerk is accordingly required to mail a certified copy of the order to the petitioner or his counsel "on the same day that the order . . . is filed." *Id.* 5.3(A). Additionally, the district court judge is required to "monitor and ensure timely notice is provided to the

parties by the clerk of the District Court." *Id.* 5.4(B). In this case, however, either the court clerk failed to comply with his duty to mail a copy of the order to Petitioner, or the order was lost in the mail system before it reached Petitioner.[1] Whatever the cause, Petitioner did not receive timely notice of the district court's order denying post-conviction relief. On July 3, 2012, still ignorant of the denial of his application for post-conviction relief, he filed an application for a writ of mandamus, asking the OCCA to require the district court to act on his application for post-conviction relief. The district court then mailed Petitioner a copy of the order denying post-conviction relief, which he received on July 9, 2012, seventeen days after it was issued.

The OCCA's procedural rules provide that "[t]he party desiring to appeal from the final order of the District Court . . . MUST file a Notice of Post-Conviction Appeal with the Clerk of the District Court within ten (10) days from the date the order is filed in the District Court." *Id.* 5.2(C)(1). The appealing party must then file a petition in error and supporting brief with the OCCA, and

---

[1] The state district court later found that, although the court clerk's notation stated a certified copy of the order was mailed on June 22, 2012, "[n]o certificate of mailing is attached to the Order or appears in this court's file," (R. at 162), and thus the court records did not definitively show whether Petitioner was mailed a copy of the order in June 2012. The state district court did not conduct further fact-finding on this issue, but treated as true Petitioner's allegation that, for whatever reason, he did not receive timely notice of the order. We also note that Petitioner has submitted documentary evidence that the prison mailroom supervisor checked the prison mail logs for the pertinent time period and found that Petitioner did not receive any mail from the state district court until July 9, 2012.

the petition in error "shall state the date and in what District Court the Notice of Post-Conviction Appeal was filed." *Id.* 5.2(C)(2). For regular felony convictions like the conviction at issue in this case, "the required documents must be filed within thirty (30) days from the date the final order of the District Court is filed with the Clerk of the District Court." *Id.* The OCCA does not use a prison mailbox rule, so a document will not be considered filed until it has actually been received by the court. *See Moore v. Gibson*, 27 P.3d 483, 488 (Okla. Crim. App. 2001).

Oklahoma's rules further provide that "[f]ailure to file a petition in error, with a brief, within the time provided, is jurisdictional and shall constitute a waiver of right to appeal and a procedural bar for this Court to consider the appeal." Okla. Stat. tit. 22, ch. 18, app., R. 5.2(C)(5). A petitioner who is denied an appeal through no fault of his own may seek to file an appeal out of time. *Id.* 2.1(E). The application for an appeal out of time must be filed in the trial court and will ultimately be granted or denied by the OCCA. *Id.*

In this case, Petitioner did not receive the district court's order denying post-conviction relief until seventeen days after it was filed—a full week after the ten-day deadline for filing a notice of appeal under Rule 5.2(C)(1) had already expired. Realizing he had missed this deadline, he promptly filed in the state district court a "Motion for Leave to Proceed at Postconviction Appeal Requesting for an Appeal Out-of-Time," in which he requested that he "be

allowed his statutory (10) day period in which to timely file notice of Post-conviction appeal." (R. at 131.)

On October 26, 2012, the state district court granted Petitioner's motion and allowed him ten days to file a notice of appeal. Petitioner filed his notice of post-conviction appeal on November 5, 2012, within the ten days granted by the district court's order. Shortly thereafter, on November 20, 2012, he filed a petition in error and supporting brief with the clerk of the Oklahoma Court of Criminal Appeals.

Approximately one year later, however, the OCCA denied Petitioner's appeal as untimely. The OCCA gave no legal effect to the district court's grant of ten days for Petitioner to file a notice of appeal. To the contrary, the OCCA recharacterized the district court's order granting relief as an order "denying [Petitioner] any recommendation for an out-of-time post-conviction appeal" (R. at 186), despite the fact that the district court found merit to Petitioner's claims and apparently believed it could simply grant the requested relief instead of making a recommendation to the OCCA as to whether an out-of-time appeal should be granted under Rule 2.1(E).

The OCCA then reasoned that because only the filing of a petition in error is described as jurisdictional in Rule 5.2(C)(5), only Rule 5.2(C)(2) is truly mandatory, despite Rule 5.2(C)(1)'s statement that a notice of post-conviction appeal "MUST" be filed within ten days from the date the order is filed. The

OCCA concluded that Petitioner could have proceeded with a timely appeal by simply filing a petition in error and supporting brief within the thirty-day period provided for in Rule 5.2(C)(2), even though he was unable to file a timely notice of appeal in compliance with Rule 5.2(C)(1) or demonstrate such compliance in the petition of error as required by Rule 5.2(C)(2). According to the OCCA, a notice of appeal is not a jurisdictionally mandatory prerequisite to an appeal, so a petitioner can simply ignore the apparently mandatory language of Rule 5.2(C)(1) and proceed to follow Rule 5.2(C)(2) without regard to the preceding rules or the requirement that the petition in error must state the date and court in which the notice of appeal was filed. Based on this conclusion, the OCCA held that "Petitioner's receipt of the final judgment after his filing deadline for the Notice of Post-Conviction Appeal did not cause him to lose or forfeit any right of appeal of that final judgment." (R. at 185.) The OCCA accordingly rejected Petitioner's appeal as untimely, holding that he was not entitled to an appeal out of time under Rule 2.1(E) because he was not deprived of his right to an appeal through no fault of his own, since he could have simply ignored Rule 5.2(C)(1) rather than seeking to comply with it.

In January 2014—approximately two months after the OCCA denied his appeal as untimely—Petitioner filed the instant petition for federal habeas relief. However, the district court held that the federal habeas petition was untimely because Petitioner's state post-conviction appeal was not properly filed, and thus

-6-

the time spent in his attempt to appeal the denial of post-conviction relief failed to statutorily toll the limitations period. *See Robinson v. Golder*, 443 F.3d 718, 720 (10th Cir. 2006) (holding that a state post-conviction application is "properly filed" for tolling purposes "if it satisfies the State's requirements for filing such a pleading"). The court further held that Petitioner was not entitled to equitable tolling because he had not demonstrated extraordinary circumstances or events outside of his control which prevented his compliance with the applicable state procedural rules: "[T]he fact that petitioner may have misunderstood or was confused about the procedural requirements provides no basis for equitable tolling," since "'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (R. at 254 (quoting *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)).) The district court thus dismissed Petitioner's habeas petition as time-barred. A judge of this court then granted Petitioner a certificate of appealability to appeal the district court's decision.

On appeal, we first hold that the district court did not err in concluding that Petitioner was not entitled to statutory tolling of the limitations period. "[W]e look to state law to determine whether an application is 'properly filed,'" *Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir. 2000) (quoting 28 U.S.C. § 2244(d)(2)), and "[a] state court's interpretation of its own law is binding on a federal court conducting habeas review," *House v. Hatch*, 527 F.3d 1010, 1028 (10th Cir. 2008). Thus, based on the OCCA's conclusion that Petitioner's state post-

conviction appeal was untimely as a matter of state law, the district court correctly held that this appeal did not statutorily toll the federal limitations period, which expired while Petitioner's post-conviction appeal was still languishing in the state court.

We reach a different conclusion, however, as to Petitioner's request for equitable tolling. The statutory limitations period may be equitably tolled if the petitioner "diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Our decision in *Burger v. Scott*, 317 F.3d 1133 (10th Cir. 2003), helps to demonstrate the types of circumstances in which equitable tolling may be warranted. In *Burger*, we considered whether a petitioner was entitled to tolling of the four-month period of time that ensued between his delivery of his state application for post-conviction relief to prison officials and the filing of his application in the state district court. As in this case, the petitioner was not entitled to statutory tolling because, as a matter of state law, his application was not considered "properly filed" until it had been filed in the state district court. Nevertheless, we concluded that the circumstances warranted equitable tolling. We explained:

> Although not in the context of AEDPA's limitations provision, the Supreme Court has applied the doctrine of equitable tolling to extend a federal limitations period where a claimant has actively pursued his judicial remedies by filing a defective state pleading during that period. In *Burnett v. N.Y. Cent. R.R.*, 380 U.S. 424 (1965), the Court

-8-

noted the following as considerations favoring equitable tolling in that case: "Petitioner here did not sleep on his rights but brought an action within the statutory period in the state court of competent jurisdiction. . . . Petitioner, then, failed to file . . . in the federal courts, not because he was disinterested, but solely because he felt that his state action was sufficient." *Id.* at 429. The Supreme Court has also indicated that equitable tolling may be applied where a court has led a particular plaintiff to believe that he or she had done all that is required under the circumstances. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

*Burger*, 317 F.3d at 1142 (alterations in original). We then concluded that "similar considerations" warranted equitable tolling in the case before us. *Id.* "A careful review of th[e] evidence demonstrates that Burger did not sleep on his federal rights, but rather believed that his state petition was sufficient to begin the State's process of reviewing his claim, thus tolling the federal statute." *Id.* at 1143. Because the petitioner "attempted to file . . . what he believed to be a sufficient state habeas petition" and diligently pursued his claims, we held that he was entitled to equitable tolling of the four-month period of time which elapsed from the time he delivered his petition to state prison officials until his petition was stamped "filed" by the state court. *Id.* at 1142-43.

Although the facts of this case are different, the reasoning is analogous and leads us to reach the same result. As in *Burger*, Petitioner did not sleep on his federal rights, but rather diligently pursued his claims by filing the documents which he believed would be sufficient to ensure state court review of his habeas claims. Respondent contends that, "unlike the circumstances of *Burger*, there was

nothing to *reasonably* suggest in this case that Petitioner's unnecessary motion for an appeal out of time filed in the State district court was 'sufficient to begin the State's process of reviewing his claim, thus tolling the federal statute.'" (Appellee's Br. at 14 (quoting *Burger*, 317 F.3d at 1143).)  We find this argument difficult to swallow, since few things could more reasonably suggest that a state court filing will be sufficient to permit state court review than the state court's express and unequivocal grant of the requested procedural relief to permit review. While the state district court's grant of an extension of time in this case was ultimately eviscerated by the OCCA's decision, nothing in the state district court's ruling even hinted such a result might be possible.  As we stated in *Burger*, "[t]he Supreme Court has also indicated that equitable tolling may be applied where a court has led a particular plaintiff to believe that he or she had done all that is required under the circumstances," 317 F.3d at 1142, and the state district court's unequivocal grant of the requested extension of time in this case certainly would have led a reasonable petitioner to believe he had done all that was required under the circumstances.  Until the OCCA dismissed the appeal as untimely in November 2013, Petitioner had no reason to know his notice of appeal—filed in accordance with the state district court's unequivocal grant of procedural relief—was not sufficient to permit state appellate review of his habeas claims.

Respondent argues that "it was clearly not within the power of the district

-10-

court to, on its own, grant [an appeal out of time] or restart the clock for Petitioner's appeal," so Petitioner could not reasonably rely on the district court's grant of an extension of time for him to comply with all of the requirements for perfecting his post-conviction appeal. (Respondent's Br. at 15.) However, we are not at all persuaded that an incarcerated pro se litigant can be held to a higher standard of legal knowledge about a court than the court itself possesses. The state district court apparently believed it could grant the requested relief, and Petitioner could reasonably rely on the state district court's representations about its own powers and authority.

Respondent also argues Petitioner should have known his actions were insufficient to permit state court review, despite the state district court's grant of relief, because it should have been patently obvious that he was required to simply ignore Rule 5.2(C)(1)'s apparently mandatory requirements and jump straight ahead to file a petition in error under Rule 5.2(C)(2) without first filing a notice of appeal. Even if we were to accept Respondent's suggestion that a pro se petitioner can be held to a higher standard of legal knowledge about state law than the state district court itself, we would find this argument to be extremely unpersuasive. None of the authorities cited by Respondent support this argument—they simply note in general that the timely filing of an appeal is jurisdictional, without explaining what an appellant should do when he receives notice of an adverse decision following the expiration of his deadline to file a

-11-

notice of appeal but shortly before the expiration of his deadline to file a petition in error. Until the OCCA denied Petitioner's appeal as untimely, it was far from obvious that a petitioner who received notice of an adverse judgment after the expiration of his deadline to file a notice of appeal under Rule 5.2(C)(1) was required to simply ignore Rule 5.2(C)(1)'s requirements and proceed under Rule 5.2(C)(2) to prepare and file a petition in error and supporting brief within the few days left for him to comply with this rule's thirty-day filing deadline, rather than seeking an extension of time to comply with all of the rules or requesting permission to file an appeal out of time under Rule 2.1(E).[2]

According to Respondent, the reason for appellants to file a notice of appeal under Rule 5.2(C)(1) is simply to trigger the district court's duty to prepare an appellate record for the OCCA to review, so it should have been obvious to Petitioner that there was no need for him to file a notice of appeal in order to proceed with his appeal. However, Petitioner points out that his appeal would almost certainly have been rejected on procedural grounds if he had attempted to proceed without any record on appeal, and Respondent's brief fails

---

[2] Respondent also suggests several times that Petitioner could have resolved his procedural problems by seeking permission to file an appeal out of time instead of seeking an extension of time to file his notice of appeal. However, Petitioner did in fact request an appeal out of time as an alternative to an extension of time. Moreover, the OCCA squarely held that Petitioner was not entitled to an appeal out of time because he received notice of the district court's decision before the expiration of the thirty-day deadline to file a petition in error. Thus, this argument ignores both the historical and the legal reality of the situation.

to provide any real reassurances on this point. Indeed, we express some doubt as to whether, in practice, an appellant who proceeded in the manner suggested by the OCCA in this case would actually have had his appeal decided on the merits, rather than having it dismissed for his failure to comply with Rule 5.2(C)(1), his failure to state the date and court in which the notice of appeal was filed as required by Rule 5.2(C)(2), and/or his failure to ensure that an appellate record was prepared.

Faced with an already expired deadline for filing his notice of appeal, Petitioner reasonably requested an extension of time and/or permission to file an appeal out of time in order to comply with Oklahoma's apparently mandatory requirements for perfecting an appeal. When the state district court then granted his request for an extension of time, Petitioner reasonably "believed that his [filings were] sufficient to begin the State's process of reviewing his claim." *Burger*, 317 F.3d at 1143. Contrary to the federal district court's characterization, this is not a case where a petitioner's filings were untimely due to his ignorance of the law; rather, it is a case in which a petitioner made reasonable, diligent efforts to comply with procedural rules which provided no clear guidance for the unusual circumstances in which, through no fault of his own, he was situated, and where the state district court itself caused him to believe that his efforts had been sufficient to ensure state review of his habeas claims. These circumstances fall squarely within *Burger*'s explanation of the

-13-

types of extraordinary circumstances that warrant equitable tolling.

These circumstances also cause us to reject Respondent's argument that Petitioner should have known his appeal was likely to be dismissed as untimely and thus filed a protective petition in the federal district court. When the state district court granted the requested procedural relief, Petitioner still had months left to file a timely federal habeas petition, and the state court's unequivocal grant of relief gave him no reason to believe a protective petition was necessary. Until the OCCA ignored the state district court's grant of relief and dismissed Petitioner's appeal as untimely, Petitioner had no reason to believe that his attempts to pursue state post-conviction relief were procedurally defective, and he thus had no reason to file a protective federal petition.

We further note that equitable tolling may be especially appropriate where the untimeliness of a state petition arises directly from "unique procedural impediments" caused by a state's ways of handling pro se prisoner's filings, such as Oklahoma's refusal to apply a mailbox rule to habeas petitions. *Burger*, 317 F.3d at 1143. In this case, the untimeliness of Petitioner's state post-conviction appeal was caused by the unique procedural impediments stemming from Oklahoma's decision to allow only short filing deadlines for appealing the denial of post-conviction relief and to start the clock running on these deadlines at the time of issuance instead of the time when an incarcerated petitioner actually receives the court's order through the prison mail system. This factor further

weighs in favor of equitable tolling in this case.

Finally, we are unpersuaded by Respondent's argument that Petitioner did not diligently pursue his federal habeas claims because it took him approximately two months to prepare and file his federal habeas petition following the OCCA's dismissal of his appeal as untimely. Particularly under the unusual circumstances of this case, we are not persuaded that a two-month preparation period for an incarcerated pro se litigant to draft a federal habeas complaint demonstrates a damning lack of diligence.

We do not here decide whether the OCCA's rules, as interpreted by the OCCA and by Respondent in this case, would satisfy federal due process concerns. However, we hold that it would be inequitable to reject Petitioner's federal habeas petition as untimely under the circumstances of this case: (1) where he was denied the ability to file a timely notice of appeal in the state post-conviction proceedings either by a failure in the mail system or by the state district court's failure to comply with its mandatory duty to promptly mail him a copy of the order denying relief, (2) the district court attempted to rectify this apparent mistake by granting him an extension of time in which to file his appeal, and (3) the OCCA concluded—after sitting on the case for a year—that the district court's decision had no legal effect and that Petitioner must be denied all relief because he should have known to simply ignore the apparently mandatory requirement to file a notice of appeal before filing his appellate documents.

-15-

In sum, Petitioner made reasonable, diligent efforts to comply with state law under the unique circumstances he faced, and the state district court "led [him] to believe that he . . . had done all that [wa]s required under the circumstances" by granting his request for an extension of time to file his appeal, *Burger*, 317 F.3d at 1142. The record clearly shows that Petitioner did not sleep on his federal rights, but rather diligently pursued his habeas claims through a state process that he reasonably believed to be sufficient. *See id.* Thus, as in *Burger*, we conclude that the district court abused its discretion in denying Petitioner's request for equitable tolling of the statute of limitations in this case.

We accordingly **REVERSE** the district court's dismissal of Petitioner's habeas petition as time-barred and **REMAND** for further proceedings in accordance with this opinion.